Case number 19-5252. James Travis Adkins v. Morgan County Tennessee et al. Oral argument not to exceed 15 minutes per side. Arthur Knight for the appellant. You may proceed. Please the court, your honors. My name is Arthur Knight. I practice in Knott's County Tennessee at law firm Taylor and Knight. It's always a pleasure to be here and an honor and a privilege to appear before this court. I'd like to reserve four minutes for rebuttal. Your honors, this court has decided what I would like to categorize as denial of medical care cases many, many times. They appear in my principal brief, in my reply brief. This is not your, the district court, the second amended complaint, these cases are defined by what rule 8 and what the second, Federal Procedure 8 gives us notice of, which is in paragraph 37 of the second amended complaint, which was amended to include Southern Health Partners and the nurse, I believe her name was Nurse Heidel, who was the contracted provider for Morgan County Tennessee. Paragraph 37 of the amended complaint says that had the defendants gotten Mr. Adkins to a hospital sooner, he would not have suffered the injuries and losses or the extent thereof, including permanent disabilities. Mr. Adkins will likely have lifelong medical care as a result of defendants' failure to provide constitutionally adequate medical care. I refer to this type of denial of care case as not a situation where an inmate, which Mr. Adkins' claim is analyzed under the Eighth Amendment because he was in for violation of probation, but more of a delay claim. He doesn't come into the facility with an established medical condition like a heart condition or a seizure disorder or something like that. He comes in healthy, as far as I know, as far as anyone knows. I'm here, we filed a motion for summary judgment. Judge Greer in Greenville, Tennessee granted our motion for summary judgment in all respects except for Officer Schubert, and he is the only one on appeal. He was a jailer and he was denied qualified immunity. We filed a motion for summary judgment. The other side did not file a response, which I understand does not mean that we automatically get our motion for summary judgment granted. Judge Greer chose in a very long and otherwise I would say a good opinion because it ruled mostly for me, but I think he conflated the verifying medical evidence rule and whether or not this was a strict denial of medical care claim versus a delay claim. Would you concede that we have to take the facts in the light most favorable to Mr. Adkins and the facts, at least there's some factual allegations that other inmates, some 24 hours, around 24 hours before he went to the hospital, other inmates came up to Officer Schubert and said, you know, he's got serious issues, he can't use the bathroom, he can't walk. Do we have to take that as true for purposes of this proceeding? I think, Your Honor, that obviously under Rule 56, you take the motion or the non-moving party's version in the light most favorable to the movement. It's not a Rule 12. The issues still have to be, they still have to present admissible facts, which I would argue that what the District Court seized on was Mr. Adkins, whose deposition was taken in Fentress County and not Morgan County, in their facility. What happened was Mr., and I know the Court's familiar with the facts, turns in a slip for back pain. Officer Schubert takes him to Methodist Medical Center in Oak Ridge, Tennessee. He's diagnosed with a back strain. Officer Schubert takes him back. On the next day, he takes him to a holding cell where he can get, well, he gave him ibuprofen. He took him to a holding cell where he can get a shower for relief. I wasn't confused about any of that. What I was asking is what happened after that where apparently he got really sick after that point. And at least you presented the evidence, some inmate suggested that they, I mean, it was unclear whether it was even Officer Schubert but said something of the effect of maybe it was Officer Kyle. I went to talk to and Officer Kyle said he was just faking it. Do we have to take that as true and just assume for a second that we do have to take it as true, does that create a genuine issue of material fact under the deliberate indifference test? First question, I think if it is a properly submitted fact that you do on a motion for summary judgment, take it as true. That was admissible, was it? I mean, it would be admissible at the trial that they told Officer Kyle about this plaintiff having more problems, incontinence and that sort of thing? It would depend on how Judge Greer took the case. If it was, if they, and all I can do is read their complaint, if they're taking it on Officer Schubert is liable for this moved hospitals, then no, I don't think it was admissible at all. He said, under their statements, he just said, well, he's faking it, that's it. That may not be what happened but that's what their best evidence shows. I think that he said that they had either Kyle or some, Morgan, I think it was the other one that was not sued, had a look on their face like he was faking it. I would suggest I've been down in my back, I'm sure many people have, you don't move very well when you are and that would be consistent with the back strain and you could not, it would not be admissible on Officer Schubert's liability for a spinal abscess that was complex and diagnosable only after he was transferred to Knox County Parkwest Hospital. One of the issues here, I think the inmate we're talking about is this James Bridges who's deposition was taken. That's correct. Put that into the record and he reported, according to his testimony, that Mr. Atkins was on the floor in pain, incontinent, things of that nature. He did. Maybe it was Officer Kyle who said that Atkins was faking it. Based upon that testimony alone, sort of irrespective of the spinal abscess issue, the argument would be, it would be obvious even to a layperson that this inmate, Mr. Atkins, was in need of medical care. He had a serious medical need that needed attention and in fact, it looks like it did. So isn't that really what we're looking at, Inmate Bridges' testimony in terms of what he thought was obvious and we can accept that or not or reach whatever inferences we want. We don't need a physician to diagnose a spinal abscess. There's an obvious need that Mr. Atkins is in need of serious medical care. I think that one, you do look at Bridges' testimony and specifically what he said and what the officers said. I'm not sure they said anything to him. I haven't gone back and re-read his deposition at length. Yes, we did put it into the record. What Bridges said, and there's no time period here, it's even inconsistent with what Atkins said in his own testimony. As I recall, I don't recall the exact time period, but Bridges got on the intercom apparently and said, here's what's happening to this other inmate Atkins. He can't walk, he's incontinent, he's having all these problems, pain, whatever. So, that would be admissible testimony that arguably would show there was a need for medical care. That's the only point I'm making. I understand. That's something obvious to a layperson like Bridges or anybody else. I agree with your Honor that that's an accurate statement of the law. It depends on how you interpret not only inmate Bridges' testimony, what had already been kept from everybody, and Atkins' own testimony, as well as are we talking about a delay in getting treatment for pain, or what's required in that? Judge Aguirre seemed to suggest that this court hadn't dealt with a verifying medical evidence rule. I disagree with that. I believe that the plaintiff had to come forward and show that what Officer Schubert or any of these other defendants did contributed to that or caused that. I don't think there's any causation here. Do you think that we can rule on causation? I would agree with you that there's not a lot of evidence that this delay in any way caused the significant problems that happened to him because it was an abscess that was already occurring. Are we allowed to look at that causation evidence on this type of qualified immunity appeal? I did look, I tried to keep up. This court just decided it's an unpublished case. Judge Sutton, I believe, wrote the opinion and they did go into causation. Oh gosh, I'm going to butcher this name. Well, I'll just give you the Westlaw citation, 2019 Westlaw 6464958 decided December 2nd, about 10 days ago. He did go into causation and that was on a motion to dismiss, but yes, I do believe that you can get into causation and I see my time is up and I'll be happy to respond. Thank you. Good morning. Good morning. Good morning, Justices. My name is Kimberly Cameron. I am here on behalf of the appellee, James Travis Adkins. This is my first appearance before this court and I appreciate your time. Thank you. Do you have any direct questions for me or shall I begin? Just proceed with your argument and rest assured, I'm sure you'll be asked some questions. Thank you, Chief Justice. We are here specifically on the issue of qualified immunity for Officer Schubert and the appellant has argued that Officer Schubert has done nothing wrong, that he was denied his qualified other evidence into consideration. This is actually an argument of sufficiency of evidence. It's not whether or not he should have been, that he was properly denied his qualified immunity. What's your best evidence against Schubert? I mean, just take it and your strongest testimony or proof against him. Yes, Justice Siler. Officer Schubert has the most first-hand knowledge of Travis Adkins' illness the entire time. Initially... He did do a lot of good for him, right? He took him to the hospital originally, got him diagnosed with his back stuff. So, I mean, it's not like Officer Schubert ignored your client. Yes, that's true. Initially, at least. Yes, that's true, Justice Murphy. Actually, Officer Kyle Schubert is his name, actually. So, when other inmates are referring to Officer Kyle, it's a rather familial kind of small jail, so they do often refer to jailors by their first name. So, when they say Kyle, that is who they're referring to. To answer you directly, yes, Officer Schubert did do things for Travis Adkins. He was initially the one that drove him to the Oak Ridge Hospital on July 15th. He was taken there not after making an initial request. It was just on direction of the nurse. He had complained of some back pain, and the nurse said, go ahead and take him on to the hospital. That has to be pretty severe back pain to go ahead and take you to the hospital. Kyle Schubert did take him. He was there the entire time. He was there when the ER physician's assistant made the initial determination that he had a sprained back, and then a physician in the ER signed off on that. They gave him a discharge order saying, specifically, you have back pain. Back pain can be indicative of other illnesses or other serious things. Take ibuprofen Motrin four times a day and come back if it worsens or radiates. Officer Schubert had that discharge order in his hand. He delivered it back to the jail. Then Officer Schubert testified that he worked not only the 15th, the 16th, and the 17th. That is Friday, Saturday, and Sunday. On Monday afternoon is when Mr. Adkins was taken back to the ER late in the afternoon. So right now we're focusing on the time for when he came back from the hospital, from the ER in Oak Ridge on the 15th up until that point. We have a short period of time, maybe 48 hours, give or take, 72 maybe. Well, Officer Schubert then, the following day on day shift, he testified that, yes, I worked all day, and Travis specifically asked me to give him some medication, which I did, pursuant to that discharge order. He gave him the ibuprofen. Then Travis also said, I need to see the nurse. It is getting worse. Officer Schubert testified in his deposition that that is exactly what Travis Adkins did, that he asked to see the nurse again. Officer Schubert said, come on down to the booking area. They put you in a different cell by himself to wait for the nurse. He sat there all day, and he was still in pain. He asked Officer Schubert directly to his face. So then the next day. What did he do, wait for a nurse that didn't ever appear? Yes, that is absolutely correct. Now that wouldn't be Officer Schubert's responsibility, would it? He just takes him to the nurse. He did take him down there. It is Officer Schubert's responsibility, though, to make sure that those complaints are heard. It would be disputed whether or not he told anyone else that Travis Adkins really did need to see someone else. Those are facts that is a good argument for the jury to hear. After that, he went on to tell him that I still need to see the nurse, and they put him in a cell to alleviate his back pain in a hot shower. So Officer Schubert had firsthand knowledge that he was continually in pain and that his pain did not alleviate. As a matter of fact, it continued to get worse. So Officer Schubert knew. Then on the 17th, when inmate Bridges, when he made his deposition, we also have testimony of another inmate named Ricky Pennington, and he also stated that they had to carry Travis Adkins out on one of those green jail mats out into the common room while they were painting the cells. That is exactly when Bridges got on the intercom and told who he believed was Kyle, Kyle being Kyle Schubert, that he still needed medical care, that he couldn't walk. He was having more trouble walking, and at that point is when he was urinating on himself and starting to have those other issues. His back did not get better. It got worse. So most of his ailments related to this abscess, do you have any evidence that the delay between that intercom and him going to the hospital actually caused his injuries to become worse than they would have been if he had been taken 12 or 24 hours before he was actually taken to the hospital? Only evidence, Your Honor, that we would have would be any direct testimony that he came back from the hospital at one level and that it progressed to get worse that day. Why don't you need some type of medical evidence that suggests that if they had taken him to the hospital immediately that his injuries today would have been not as bad as they are? So like causation, like but for the fact that there was this delay, he would not be in the injuries that he has today. Well, Your Honor, we were not specifically arguing a delay. It was just that was what the appellant is arguing, that we were arguing a delay. However, that is not the type of verifying medical evidence that the appellant says that we need to put into the record. They're arguing like Napier and that it was similar to the Burgess Fisher case here where you needed to put that in the record because it was not open and obvious to someone. Not open and obvious, that's the wrong word, but if it was not something that they could see readily to like a lay person. Don't you have to show that Officer Schubert's deliberate indifference, what you think was his deliberate indifference, which I take to be his response to the other inmates and saying he's just faking it or at least that's what's alleged. Don't you have to show that that non-responsiveness to the fact that he can't walk and he's incontinent caused some type of further injury? I mean this abscess was going to happen no matter what, right? It had nothing to do with him, it's just like an internal phenomenon. Yes. So don't you have to have some evidence that the 24-hour or so delay caused the abscess to be worse than it otherwise would have been but for that delay? Oh. I mean it's just ordinary 1983 requires you to obtain damages, which I assume is what you're seeking. You have to show that the deliberate indifference from Schubert caused the injury. Your Honor, that is not exactly what we're arguing here, that any causation issue. That is what the appellant is trying to argue, that there's a causation issue. That's what they are arguing. So my response is where is the evidence that there was causation evidence? We have not put evidence of causation into the record because that is not what we need to show that he was deliberately indifferent. Is part of your argument that the period of time from when Bridges told, apparently Schubert, of all these problems that Atkins was having, that this delay, I know maybe we're not characterizing it as that, but that Mr. Atkins is in pain, he's suffering, he's having problems, and so I don't know what the record would show in terms of how that contributed to the spinal abscess, but he has a period of time where he is, I think according to your complaint and as part of your claim, he's experiencing pain, discomfort, all those kinds of problems and he doesn't get any treatment. Well, yes. Is that part of your complaint? Yes, it is, Your Honor. What we're saying is when he came back from the hospital on July 15th, he had an order directing treatment. He had a discharge order that you get when you leave the ER, and it specifically stated if your pain worsens and if it radiates or anything else, because back pain can be indicative of other serious illnesses, you need to come back to the ER and you need to go back. And that would be some evidence submitted that when it didn't go back, within that period of time, that it continued to worsen. And we can show that just even with direct testimony from Mr. Atkins. The spinal abscess is there. Yes, it's there. But that it could have been treated earlier if Schubert had gotten him to the hospital the second time around, and then he wouldn't have had 12 hours, 24 hours, whatever it is, this worsening of condition, pain, all of that sort of stuff. Yes, Your Honor. It's my understanding that these types of issues, it was already existing. We don't know when he would have contracted some kind of bacterial infection, but we do know that they are pretty quick. They can go from zero to 60 really fast. So although the ER wasn't aware of it on that Friday, they specifically said come back if it gets worse, if it doesn't get any better, because it can indicate something much more worse. What day did this take place, on Saturday? Yes, yes, Your Honor. He initially went on Friday, July 15th, and then on Saturday, that is when he initially told Officer Schubert, who already had knowledge of him going to the hospital because he was the one that drove him. But they got him to the hospital on Sunday. No, they didn't take him back to the hospital again, Your Honor, until about 4 p.m. on Monday, July 18th. Monday. Yes. But that inmate said he told other officers besides Schubert that this guy was having problems walking incontinence and all that stuff. Yes, on Sunday, Your Honor. Yes, that is true. Because that was the day that it's shown by other testimony that the cells were being painted, and that's when Inmate Pennington and Inmate Bridges, they were assisting Travis to the restroom, to the toilet, moving him on one of those green jail beds out of the cell, out into the common room, so it could be painted. So they were even telling Officer Kyle, or on the intercom at that time, that was a Sunday. So to refer back to Justice Murphy, that would have been information going from the date of him coming back from the ER up until that Sunday that it just, boom, it worsened so quickly. But they were already on notice that if it was to get better, or I'm sorry, if it was to worsen, that he needed to come back to the ER immediately. And that is where, when he continued to tell Officer Schubert on Saturday, hey, I need to go to the hospital. I want to see the nurse. It's not getting better. I need to see the nurse. It's not getting better. All they did was sit him in a cell and say the nurse will be here later, and then they let him take a shower the next night. So they didn't automatically get on the phone, get on the horn, contact whoever had the authority to go ahead and transport him back. And that's where Officer Schubert dropped the ball. I hope that answers your question, Justice. I'm getting close to my time. Do you all have any additional questions for me? No, you don't have to use all your time. Thank you. Thank you. I appreciate it. I'm extremely nervous. Thank you very much for your time. We hope you'll come back and speak to us again. Thank you. Thank you very much. To alleviate Ms. Cameron's concern, I'm always nervous. And I've been up here several times. That's human nature. You know, if that was the record, I would not be here. I would just encourage the court to review the testimony of Bridges. He doesn't even mention, he mentions Josh Morgan over the intercom. He mentions Josh Morgan on his own. It was suggested to him after he referred to somebody as a short little guy. Oh, was that Kyle? Was that Kyle Schubert? Yes. And that's when he comes out and says that. They don't have any evidence that it's a spinal abscess. Yes, it's my argument. My argument is based upon what they put in their complaint. Because they've done very little else. Pennington's deposition was taken. He doesn't say anything about what Bridges says. But I know that Bridges can, if admissible, create an issue of fact alone, regardless of what Pennington says. I accept that. Most of these cases come in like Judge Greer cited the estate of Carter in his memorandum of opinion in the city of Detroit. And that female inmate came in with a heart condition. And they knew it. And she had heart medication. And they didn't give it to her. Here is, you know, you should have gotten him there sooner. Well, the reason that everybody thought he had a back strain from lifting weights or lifting water bags is because that's exactly what Adkins told them. And that's what he told the doctors on July 15th. And that's what he continued to tell everybody the 16th, the 17th. And then he gets to the 18th. And Travis Shadden, who was also a defendant, the jail administrator, comes by and they say, hey, this guy's incontinent, blah, blah, blah. I think he may need to go back. He goes right back. And then and only then does Adkins say, oh, yeah, I've been doing these IV drugs. They immediately take him to Park West Hospital in Knox County. They diagnose him. Thankfully, he's over that and he's over his spinal abscess. I think he was released sometime in September of 2016. But that is the reason. They have not put forth a theory on anything other than in their complaint. All this stuff about Adkins telling Schubert, this, that, and the other, never happened, not in the record. And if they wanted to put anything like that in the record, or if Adkins said that, they could have done so. They haven't. But I don't think Adkins ever said that. His deposition was taken twice because they first just sued us and they sued Southern Health Partners. I'm just trying to remember from the record. I may be totally wrong here. But I see in Judge Greer's opinion or somewhere that Officer Schubert was told face-to-face at some point about Adkins' worsened condition. Is that somewhere in the opinion? In Bridges, that is the only thing that Judge Greer hung his hat on was Bridges' testimony. No face-to-face? Oh, yes. He did say, after it was suggested to him by, it wasn't me, that, hey, that's Kyle Schubert. Well, Schubert happens to be sued, not Josh Morgan. He said, yeah, yeah, face-to-face. But he's also saying stuff like, I couldn't swear to the time. You know, time gets away from you around here. I couldn't swear to this. I couldn't really be sure about this. Face-to-face is different from the intercom, then. That's correct. You're correct, Your Honor. You're correct. Thank you. I see my time is out. Okay. Thank you. Thank you very much. Mr. Knight and Ms. Cambron, again, we very much appreciate your arguments this morning. It's not yet afternoon. And the case will be submitted.